UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHAUNA MARIE GROSS, a/k/a<br>SHAUNNA MARIE GROSS,<br><br>Defendant. | 4:21-CR-40169-04-KES<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant, Shauna Marie Gross, filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Docket 412. The Federal Public Defender filed a notice of intent not to file supplemental briefing on Gross's behalf. *See* Dockets 415,416, 417. Plaintiff, the United States of America, opposes the motion. Docket 417. Gross filed three supplements to her pro se motion. Dockets 422, 423, and 424. She also filed a second motion requesting a decision on her original motion. Docket 425. For the following reasons, Gross's motion for compassionate release is denied.

**BACKGROUND**

In August 2023, Gross was convicted at trial of conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine. Docket 274. In November 2023, the court sentenced Gross to 140 months in custody, followed by 5 years of supervised release. Docket 328; Docket 330. Gross is currently serving her sentence at Victorville Medium I FCI. Her

projected release date is May 25, 2032. *See* Inmate Locator, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/?os=vb.&ref=app (register number 79443-509; last visited Sept. 23, 2026).

As grounds for relief in her current motion, Gross cites U.S.S.G. § 1B1.13(b)(3), care of spouse, as well as extraordinary rehabilitation and non-retroactive changes in law for drug quantities and "performing a low-level trafficking function." Docket 412 at 2-5.

**DISCUSSION**

Sentences are final judgments, meaning a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). Congress passed The First Step Act (FSA) in 2018, facilitating an exception to the finality of sentences. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In relevant part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). A reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(ii). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect the FSA's authorization for federal courts to rule on compassionate release motions initiated by defendants. U.S.S.G § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.*; *2023 Amendments in Brief*, U.S. SENT'G COMM'N, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited July 31, 2026).

## I. Administrative Exhaustion

Before the FSA's passage, only the Bureau of Prisons (BOP) Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Gross submitted a request for compassionate release to the warden of Victorville Medium I FCI on December 9, 2025. Docket 412-1 at 2. Gross

received a response from the Warden on December 12, 2025, indicating that her request was received and being processed. Docket 415 at 120. There is no further documentation provided in the BOP records regarding Gross's compassionate release motion. The United States concedes that Gross has exhausted her administrative remedies. Docket 417 at 2. Thus, the court reviews Gross's motion on the merits.

**II. Extraordinary and Compelling Reasons**

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission's policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G § 1B1.13(b)(1)-(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an unusually long sentence, served at least ten years, and a change in law produces a gross disparity

between the sentence being served and the sentences likely to be imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

**A. Care of Spouse**

Gross argues compassionate release is warranted under U.S.S.G. § 1B1.13(b)(3)(C), "incapacitation of defendant's spouse . . . when the defendant would be the only available caregiver for the spouse . . . ." Docket 412 at 2. She advises that her husband "suffered several strokes, the last one paralyzed his left side [to] where he cannot care for himself." *Id.* She indicates that "[i]mmediate family hav[e] concerning medical conditions, and the detainee [is] the only available caregiver for these family members[.]" *Id.* Gross also filed a response to the United States' opposition to her motion, indicating she should be released to take care of her "homeless[,] 68 year old Vietnam Veteran husband that cannot care for himself[.]" Docket 418 at 3-4. She advises that her husband's "doctor and hospital have ordered that he has 24 hour care." *Id.* at 4. Gross indicates that there is "no one else to care for him[]" and that "[t]he only child in the area is currently incarcerated and once released, will enter

rehab and sober living for a fentanyl addiction." *Id.* Gross also provided a letter from her husband, Thomas Holst. In this letter, Holst indicates that he is "currently in a Skilled Nursing Facility in Prescott[,] AZ." Docket 422-1 at 2. He also states that he is now "80-100% disabled and unable to take care of [himself] when [he] get[s] discharged from this facility." *Id.* He states that he is reaching out to see if Gross can be released early to help him. *Id.*

The medical records provided by Gross regarding her husband indicate that "[o]n evaluation, he was found to have elevated creatine kinase (peaking at 857), acute kidney failure, abnormal kidney function studies, leukocytosis, and adult failure to thrive, along with ambulatory dysfunction and difficulty walking." Docket 423-1 at 8. "Imaging revealed chronic right cerebrum infarction, and labs confirmed ongoing metabolic abnormalities." *Id.* Holst appears to have been hospitalized at Granite Creek Health and Rehabilitation Center beginning on April 29, 2026. Docket 423-1 at 63-96. The records indicate that "[d]uring hospitalization, his acute issues were managed with aggressive IV fluid hydration for rhabdomyolysis and acute kidney injury, monitoring and trending CK levels (which improved), and supportive care, along with initiation and adjustment of antihypertensive therapy." *Id.* at 92. In addition, the records state that Holst was "treated for left-sided hemiplegia/hemiparesis, dysphagia (including oropharyngeal phase), cognitive communication deficits, and functional decline, requiring physical and occupation therapy due to impaired mobility, balance, strength, and safety awareness." *Id.* Additionally, they state that Holst was diagnosed with "right

carotid artery stenosis/ occlusion, history of stroke with residual deficits, difficulty walking, need for assistance with ADLs, and generalized muscle weakness." *Id.* The Occupational Therapy Treatment Encounter Notes included in Holst's medical records indicate that in May of 2026 he required assistance with transfers, bathing, eating, toileting, and dressing. *Id.* at 23-27.

What the medical records do not provide is the level of assistance needed upon discharge. It is also unclear whether Gross would be able to provide the level of care Holst may need. Gross herself has been diagnosed with thyroid disorders, obesity, hyperlipidemia, a mood disorder, emphysema, chronic obstructive pulmonary disease, osteoarthritis, and a kidney disorder. Docket 415 at 65-66.

Even if Gross was able to provide the type of care needed by her husband, she must also establish that she "would be the only available caregiver" for her husband. U.S.S.G. § 1B1.13(b)(3)(B). According to the Final Presentence Report, Gross has two adult children who, as of October 2023, also resided in Kingman, Arizona. Docket 318 ¶ 79. There is no information provided that indicates that neither of these children are available to assist Holst. Thus, these children are potential caregivers. There is also no information regarding other potentially available family members. "The availability of any other potential caregiver is enough to preclude compassionate release for extraordinary and compelling reasons under § 1B1.13(b)(3)(C)." *United States v. Prado*, No. 5:21-CR-50022-RAL, 2024 WL 3964420, at *3 (D.S.D. Aug. 28, 2024).

Gross states throughout her court filings that her husband is a Vietnam Veteran. As such, he should have access to medical care and other assistance through the Department of Veteran Affairs. "Veterans may qualify for long-term care assistance through the VA if they need skilled nursing care or assistance with daily needs." *See* VA LONG TERM CARE BENEFITS, VETERANS GUIDE, https://veteransguide.org/va-benefits/long-term-care/(last visited September 23, 2026. This is another potential option that Gross provides no information about.

Therefore, Gross fails to meet the legal requirements of extraordinary and compelling reasons for early release to care for her spouse.

**B. Extraordinary Rehabilitation**

Gross next asks the court to consider early release based on her "Extraordinary Rehabilitation." Docket 412 at 4. She sets forth that she has attained her GED while incarcerated, and completed drug education, the RDAP program, financial literacy, Houses of Healing, Parenting, Trauma in Life, Family Series Programming, and Threshold. *Id.* The United States argues that her request should be denied because she offers this as a standalone reason for compassionate release. Docket 417 at 5. But Gross specifically notes in her motion that "[r]ehabilitation of the defendant alone shall not be considered as an extraordinary and compelling reason." Docket 412 at 3 (internal quotation omitted). She also specifically requests that in her case the "totality of the circumstances should be considered as an extraordinary and compelling reason for CR (sentence reduction)." *Id.* Thus, the court reviews Gross's request

for consideration of what she deems "extraordinary rehabilitation" in conjunction with her other arguments.

Under U.S.S.G. § 1B1.13(d), "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," although it can be "considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." The court commends Gross on her rehabilitation efforts and encourages her to continue working on preparedness for release. But her efforts are no different than the rehabilitation efforts of thousands of inmates throughout the BOP. The court does not find Gross's rehabilitation efforts, even when considered in conjunction with the other grounds argued by her, to reach the threshold for extraordinary and compelling reasons for a sentence reduction.

**C. Non-Retroactive Changes in Law**

Gross lists "Non-Retroactive Changes In Law for Drug Quantities and Performing a Low-Level Trafficking Functions" as her next basis for release. Docket 412 at 4. The United States again believes this is offered as a standalone reason for compassionate release. Docket 417 at 6. Based on the information above, the court disagrees and considers this argument under the totality of circumstances request.

A "change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this

policy statement." U.S.S.G. § 1B1.13(c). It can only be considered for purposes of determining the extent of a reduction if a defendant otherwise establishes an extraordinary and compelling reason for a reduction. *Id.* The Eighth Circuit has held that "a non-retroactive change in law, whether offered alone or in combination with other factors, cannot contribute to a finding of 'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)." *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022). Thus, Gross's arguments utilizing the First Step Act and the changes to the law that have not been made retroactive cannot be considered by this court as extraordinary and compelling reasons for a sentence reduction.

**D. Danger to the Safety of the Community & Others**

Gross sets forth a separate argument claiming she should be released early because she is not a danger to the community. Docket 412 at 5. She states that "[t]his court should view the progress in [her] programming only for the purposes of its assessment of [her] potential danger to the community, not as an independent reason meriting early release." *Id.* The United States argues that Gross expresses no remorse for her criminal conduct. Docket 417 at 9. It believes that Gross "vaguely references 'rehabilitation' without saying why she needed rehabilitation or what that entailed other than having no incident reports and obtaining her GED while in custody." *Id.* The United States believes this is little assurance that she will not re-engage with drug distribution upon release.

The Guidelines require a court to determine a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before reducing a term of imprisonment. U.S.S.G. § 1B1.13(a)(2).

18 U.S.C. § 3142(g) provides:

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including--
>
> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Gross's crime involved distribution of a controlled substance. The weight of the evidence was significant, and a jury convicted Gross of the crime charged. Gross's history and characteristics have been outlined in detail above and indicate that Gross still poses a danger to the community and others. Gross has not provided any extraordinary and compelling reason to indicate she is not a danger to the community or others, and she has not provided the

court with evidence to show that she will not re-engage in drug distribution if released.

**III. Sentencing Factors of § 3553(a)**

The § 3553(a) sentencing factors confirm that compassionate release is not warranted in this case. The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). Gross argues that she "did well on pretrial release and has given no indication that [she] will reoffend or repeat the behavior giving rise to the unique nature and circumstances of this case." Docket 412 at 5.

Gross was part of a conspiracy to distribute methamphetamine. Docket 318 ¶ 3. In determining her base offense level, Gross was attributed with 4.5 kilograms (actual) of methamphetamine. Docket 329-1 at 5. The PSR indicates that she was responsible for mailing over 19 kilograms of methamphetamine. Docket 318 ¶ 52. The seriousness of Gross's offense demands a just sentence that reflects the crime.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Here, granting compassionate release would not promote respect for the law nor provide just punishment. Gross has only served just over 4½ years of her 140-month sentence, which is not sufficient punishment for her actions. For these

reasons, granting a sentence reduction would not promote respect for the law nor provide just punishment.

The remaining § 3553(a) factors likewise do not support a sentence reduction. If the court were to grant compassionate release, similar conduct in others would not be deterred because Gross's punishment would not be severe enough to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B). Gross was found guilty by a jury of conspiracy to distribute meth. Docket 273. Reducing her sentence at this time would not protect the public from further crimes if Gross resumed her criminal behavior. *See* 18 U.S.C. § 3553(a)(2)(C).

The court finds that the remaining § 3553(a) factors weigh against Gross. In sum, the court sentenced Gross to 140 months in custody in the amended judgment. Docket 330. The imposed sentence was within the guideline range determined after Gross was given a 2-level reduction for being a minor participant and a 4-level reduction for her role per § 3B1.2(iii). Docket 329-1 at 5. After careful consideration, the court concludes that Gross's sentence continues to be appropriate for the seriousness of the crime to which she was found guilty.

**CONCLUSION**

Gross has failed to satisfy the extraordinary and compelling reason standard for compassionate release. Thus, it is

ORDERED that Gross's second pro se motion for relief under the FSA (Docket 412) is denied; it is further

ORDERED that Gross's motion for a decision re motion for relief under the FSA (Docket 425) is denied as moot.

Dated September 24, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE